IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY HOPE ALVAREZ, | ) |
| Plaintiff, | ) ) ) ) |
| vs. | ) Case No. CIV-14-191-C ) |
| INDEPENDENT SCHOOL DISTRICT NO. 89 OF OKLAHOMA COUNTY, OKLAHOMA a/k/a OKLAHOMA CITY PUBLIC SCHOOLS, MICHELLE PONTIKOS, in her official and individual capacity as Principal of Roosevelt Middle School, DR. CHRIS CARAM, in her official and individual capacity as Director of School Turnaround, and TAMIE SANDERS, in her official and individual capacity as Principal of U.S. Grant High School, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

I. BACKGROUND

Plaintiff Mary Hope Alvarez, an Hispanic female over the age of forty, is a former employee of Defendant Independent School District No. 89 of Oklahoma County, Oklahoma, a/k/a Oklahoma City Public Schools ("OKCPS"). From 2007 through 2012, Plaintiff served as Assistant Principal at U.S. Grant High School. During the 2011-2012 school year, Defendant Tamie Sanders, the new principal at U.S. Grant High School, sent letters home to numerous Hispanic students instructing them not to return to school because of a purported failure to achieve sufficient credits. Plaintiff disagreed with these instructions and called the students' parents to provide them with information about the students' rights to be educated

until age twenty-one, regardless of the number of credits. Plaintiff alleges that in retaliation for her actions in contacting the Hispanic students' parents, Defendant Sanders threatened to place Plaintiff on a Plan for Improvement, gave Plaintiff a less than satisfactory performance review, and did not recommend renewal of Plaintiff's employment contract for the 2012-2013 school year at U.S. Grant High School. Plaintiff applied for numerous positions, and ultimately the superintendent of OKCPS appointed Plaintiff as the assistant principal at Roosevelt Middle School for the 2012-2013 year. After expressing her passion for outreach to Hispanic parents, Plaintiff met with Defendant Michelle Pontikos, principal of Roosevelt Middle School, and Defendant Chris Caram, director of school turnaround. Plaintiff alleges that Defendants Pontikos and Caram told Plaintiff to resign or face an investigation into allegations that Plaintiff had illegally worked for a consulting group while serving as an Assistant Principal, among other false accusations. Plaintiff also alleges that Defendants Pontikos and Caram said Plaintiff would lose her job if an investigation were conducted, that Plaintiff could not have the weekend to think about the decision, and the Plaintiff could not request a transfer to a different position. Plaintiff states that she then resigned under extreme duress.

Plaintiff filed this suit, alleging race, national origin, and age-based discrimination; retaliation for engaging in conduct protected by Title VII; interference with contract; and violation of Plaintiff's First Amendment right to free speech. Defendant Chris Caram filed this motion pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiff's race and national origin discrimination claims, First Amendment retaliation claim, and interference

of contract claim. For reasons more fully set forth herein, the Court now partially grants Defendant's Motion to Dismiss (Dkt. No. 29).

## II. STANDARD OF REVIEW

The standard for consideration of motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) is set forth in the Supreme Court's decision in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and the subsequent decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009). The Supreme Court made clear that to survive a motion to dismiss, a complaint must contain enough allegations of fact which, taken as true, "state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to survive a motion to dismiss. Id. When considering a motion to dismiss, courts look to the complaint and those documents attached to or referred to in the complaint, accept as true all allegations contained in the complaint, and draw all reasonable inferences from the pleading in favor of the pleader. Pace v. Swerdlow, 519 F.3d 1067, 1072-73 (10th Cir. 2008); Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007). A court is not bound to accept as true a plaintiff's legal assertions. Iqbal, 556 U.S. at 678.

III.  ANALYSIS

A.  § 1981 Claims

Plaintiff alleges that Defendant Caram engaged in race and national origin discrimination and retaliation in violation of 42 U.S.C. § 1981, which "prohibits race discrimination in employment." Richardson v. Gallagher, 553 F. App'x 816, 824 (10th Cir. 2014).  When a plaintiff relies on circumstantial evidence to support a charge of discrimination or retaliation pursuant to 42 U.S.C. § 1981, courts apply the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze the plaintiff's claims.  See Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1194-95 (10th Cir. 2011).

To establish a prima facie case of race-based discrimination under McDonnell Douglas, Plaintiff must show "(1) membership in a protected class and (2) an adverse employment action (3) that took place under circumstances giving rise to an inference of discrimination."[1] Daniels v. United Parcel Serv., Inc., 701 F.3d 620, 627 (10th Cir. 2012) (citing EEOC v. PVNF, L.L.C., 487 F.3d 790, 800 (10th Cir. 2007)).  To establish a prima

---

[1] As this Court has previously recognized, the Tenth Circuit generally applies the four-part test set out in Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220 (10th Cir. 2000), to determine whether a plaintiff has established a prima facie case of race-based discrimination. Leverette v. Archer Pressure Pumping, LLC, Case No. CIV-13-163-C, 2014 WL 1338080, at *2 n.3 (W.D. Okla. Apr. 2, 2014).  But "'when addressing discrimination claims that either do not fall into any of the traditional categories (e.g., hiring or discharge) or present unusual circumstances,'" the Court uses the shortened three-prong test from Daniels.  Id. (quoting Kendrick, 220 F.3d at 1227 n.6).  Because this case involves adverse actions outside of the traditional categories—such as a threat to commence an investigation based on false accusations—the three-part test from Daniels is applicable.

facie case of retaliation, Plaintiff must show: "(1) 'she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.'" Id. at 638 (quoting Hinds v. Sprint/United Mgmt. Co., 523 F.3d 1187, 1202 (10th Cir. 2008)). Both claims require Plaintiff to show an adverse employment action. Although Plaintiff does not have to fully "establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim" under the pleading standards articulated in Twombly and Iqbal. Khalik v. United Air Lines, 671 F.3d 1188, 1192 (10th Cir. 2012).

The Defendant asserts dismissal is appropriate because Plaintiff has failed to allege facts showing she suffered an adverse employment action. The Tenth Circuit liberally defines "adverse employment action." Anderson v. Coors Brewing Co., 181 F.3d 1171, 1178 (10th Cir. 1999). Establishing whether the challenged action is an "adverse employment action" requires a case-by-case approach and is not limited to only monetary losses in the form of wages or benefits. Hillig v. Rumsfeld, 381 F.3d 1028, 1031 (10th Cir. 2004). The Tenth Circuit has held that "[a]n adverse employment action is a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" Daniels, 701 F.3d at 635 (quoting Piercy v. Maketa, 480 F.3d 1192, 1203 (10th Cir. 2007)) (emphasis removed). Defendant Caram contends that because Plaintiff voluntarily resigned in lieu of

facing an investigation, the termination of Plaintiff's employment did not constitute an adverse employment action.  See Exum v. U.S. Olympic Comm., 389 F.3d 1130, 1135 (10th Cir. 2004) ("We have previously held that even requiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary.").  Plaintiff argues that her resignation was not voluntary and states that she resigned during the meeting with Defendant while under extreme duress.

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true the facts pled by Plaintiff.  Alvarado, 493 F.3d at 1216 (citing David v. City & Cnty. of Denver, 101 F.3d 1344, 1352 (10th Cir. 1996)).  It is inappropriate to decide issues of fact—such as whether Plaintiff's resignation was objectively voluntary—at the dismissal stage, before the parties present evidence and when the Court confines itself to analyzing the pleadings.  Plaintiff's Complaint must merely contain "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  Plaintiff has satisfied this standard.  The Court must therefore deny Defendant's motion to dismiss Plaintiff's § 1981 claims.

B.  First Amendment Retaliation

Plaintiff asserts that Defendant violated her First Amendment rights by retaliating against her for speaking to parents of Hispanic students at U.S. Grant High School and for speaking to Defendant Pontikos about ideas for outreach to Hispanic parents.  A five-step

inquiry known as the "Garcetti/Pickering"[2] analysis generally governs freedom of speech retaliation claims for public employees. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1202 (10th Cir. 2007). First, the Court determines whether the employee's speech was made as a private citizen or "'pursuant to [his] official duties.'" Id. (quoting Garcetti, 547 U.S. at 421). If the Court finds that the employee spoke as a private citizen, it moves to the second step of the Garcetti/Pickering analysis and asks "whether the subject of the speech is a matter of public concern." Id. The Court proceeds to the third step—a balancing inquiry—only if the employee's speech was a matter of public concern. Id. at 1203. If "the employee's interest in commenting on the issue outweighs the interest of the state as employer," the employee must demonstrate that his speech was a substantial or motivating factor in an adverse employment action. Id. Finally, if the employee succeeds in establishing that the protected speech was such a motivating factor, the employer may show that it would have taken the same adverse action against the employee, even in the absence of the employee's speech. Id. The first three steps involve questions of law, and the trier of fact generally resolves the last two. Id.

Defendant argues dismissal is appropriate because Plaintiff has not shown that she spoke as a private citizen, rather than pursuant to official duties. However, the Court's Order on August 7, 2014, held that the First Amendment protects Plaintiff's communications with

---

[2] See Garcetti v. Ceballos, 547 U.S. 410 (2006); Pickering v. Bd. of Educ., 391 U.S. 563 (1968).

parents of Hispanic students at U.S. Grant High School regarding the ability of those students to continue their education because Plaintiff spoke as a private citizen. (Dkt. No. 31, at 10.)

Defendant also argues that dismissal is appropriate because Plaintiff has not shown that Defendant Caram had knowledge of Plaintiff's speech at the time of the adverse employment action. The fourth prong of the Garcetti/Pickering analysis requires Plaintiff to prove that the protected speech was a motivating factor in the adverse employment action. Brammer-Hoelter, 492 F.3d at 1203. Inherent in this requirement is some showing that Defendant knew of the speech at the time of the adverse employment action. See Rohrbough v. Univ. of Colo. Hosp. Auth., 596 F.3d 741, 750 (10th Cir. 2010). Plaintiff has pleaded facts sufficient to make Defendant's knowledge a question of fact. When deciding on a motion to dismiss, the court must "resolve all factual disputes in favor of plaintiff." Intercon, Inc. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000). Thus, dismissal at this stage is inappropriate. Viewing the facts in the light most favorable to Plaintiff, Plaintiff has made a plausible claim that she spoke as a private citizen, on a matter of public concern, and Defendants retaliated against her for that protected speech.[3] Plaintiff's factual allegations are sufficient to survive dismissal.

C. Interference with Contract

Finally, Plaintiff pleads a claim for interference with contract. However, Plaintiff acknowledges in her Response to Defendant's Motion (Dkt. No. 33), that because

---

[3] Defendants also reassert that Plaintiff has failed to plead an adverse employment action. The Court addressed and rejected that argument. See supra III(A).

"Defendants have stipulated that the actions taken by Defendant Caram against Plaintiff . . . were within the scope of her employment," Plaintiff must concede this claim. (Pl.'s Resp., Dkt. No. 33, at 13.) Therefore, the Court will dismiss Plaintiff's claim for interference with contract.

## IV. CONCLUSION

Accordingly, the Court hereby GRANTS IN PART and DENIES IN PART Defendant Dr. Chris Caram's Motion to Dismiss Plaintiff's Amended Complaint (Dkt. No. 29).

IT IS SO ORDERED this 8th day of September, 2014.

*[signature]*

ROBIN J. CAUTHRON
United States District Judge